IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E. LORRAINE WEST,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 07-158-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM**

### I.  **INTRODUCTION**

This case comes from the denial of E. Lorraine West's ("West") claim for Social Security disability benefits. West, the plaintiff, applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on January 28, 2004. Title II, 42 U.S.C. §§ 401-33 (2008). In her application, she claimed that she became disabled on October 1, 2002. (Tr. at 93.) After the Commissioner denied the application initially and on reconsideration, West requested a hearing before an Administrative Law Judge (the "ALJ"). (Id. at 101.) West appeared at the September 29, 2005 hearing unrepresented. (Id. at 37.) Following the hearing, on January 9, 2006, ALJ Judith A. Showalter ("ALJ Showalter") issued a written opinion denying West's application for disability benefits. (Tr. at 22.) Specifically, ALJ Showalter found that, although West could not perform her past relevant work, she retained the capacity to perform other jobs that existed in the national economy. (Id. at 28-29.) On March 6, 2006, West requested a review of the ALJ's decision by the Appeals Council, which denied review on July 25, 2006. (Id. at 13, 18.) Upon that denial, the Commissioner's decision became final. (Id. at 13-15.)

On March 16, 2007, West filed a timely appeal with this court. (D.I. 2.) Currently before the court are the parties' cross-motions for summary judgment. Because the court finds that the ALJ's decision lacks adequate discussion regarding her conclusion with respect to West's hepatitis C, chronic fatigue syndrome and the combination of West's impairments, it will deny the Commissioner's motion for summary judgment, deny West's motion for summary judgment, and grant West's request for remand. Therefore, the court will remand the decision of the ALJ, pursuant to 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

West, whose date of birth is March 3, 1959, completed three years of college in 1992 and worked as an x-ray technician prior to the date of her alleged disability. (Tr. at 111, 128, 131.) West claimed she was unable to work due to chronic fatigue syndrome, skin cancer, degenerative neck disease, depression, and chronic pain. (Id. at 127.) She later added Epstein Barr virus and hepatitis C to her list of disabilities. (Id. at 151.)

### A. Medical Evidence

#### 1. Physical Assessments

On January 3, 2002, West had an MRI of her cervical spine at Wide Open MRI in Dover, and John B. Stockel, M.D. ("Dr. Stockel") concluded that she had mild mid cervical spondyloarthropathy. (Tr. at 165.) Dr. Stockel recommended a clinical correlation. (Id. at 165.) In September 2002, Gabriel Samou, M.D. ("Dr. Samou") treated West for her lower back pain. (Id. at 171.) Dr. Samou diagnosed her with, among other ailments, cervical disc degeneration. (Id.) Dr. Samou continued her prescriptions for pain management and also noted that she was

---

[1] 42 U.S.C. § 405(g) provides in relevant part that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

positive for Epstein Barr virus. (Id.) On October 23, 2002, another treating physician, Robert M. Wilson, Jr., D.O. ("Dr. Wilson") recommended that West discontinue work due to her lumbar disc displacement. (Id. at 189.) Dr. Wilson indicated that West was experiencing abdominal pain, excessive weight loss, and decreased energy due to Epstein Barr virus. (Id.) On April 11, 2003, Dr. Wilson stated that West was unable to work indefinitely, and noted that she could not "lift anything over five pounds and is unable to [do] repetitious bending or twisting." (Id. at 185.)

On February 2, 2003, West began to see pain management specialist, Gary E. Siegel, M.D. ("Dr. Siegel") for her chronic neck pain and right trapezius pain. (Id. at 203.) She reported a six out of ten on a pain scale. (Id.) Dr. Siegel noted West's past medical history of Epstein Barr virus, right adrenal mass, arthritis, fibromyalgia, depression and skin cancer. (Id. at 204-05.) He diagnosed her with cervical radiculopathy and cervical degenerative disk disease. (Id.) Dr. Siegel implemented a treatment of steroid injections and continued West on her pain narcotics. (Id. at 205.) On April 28, 2003, Dr. Siegel reported that West had "excellent" relief from the steroid treatment, and that her pain level was a four. (Id. at 199.) In an August 2003 evaluation, Dr. Siegel reported that West's pain was continuous at a two or three on a pain scale, and that she was unable to continue steroid injections due to financial reasons. (Id. at 193.) On October 14, 2003, Dr. Siegel again treated West for her neck pain and right mid- to lower back pain. (Id. at 191.) She reported having "some" relief from cervical epidural steroid injections, but did not indicate an interest in continued injections. (Id.)

In March 2004, Brian K. Hudes, M.D. ("Dr. Hudes"), a gastroenterologist, treated West for hepatitis C. (Tr. at 269.) Dr. Hudes assessed West as having normal liver enzymes, but found that she was hepatitis C antibody positive and "required therapy." (Id. at 270.) In May

3

2004, Dr. Hudes reported that West had "genotype 1b virus" and had "only minimal inflammation and minimal scarring;" he indicated a "20 to 30% chance over five years" of her developing cirrhosis. (Id. at 264.) Dr. Hudes, however, delayed West's hepatitis treatment due to her "depression, lack of appetite, and weight loss." (Id. at 261.) Instead, he recommended psychiatric treatment. (Id. at 260.)

On May 20, 2004, David A. Atefi, M.D.[2] ("Dr. Atefi") examined West and noted that she complained of chronic fatigue syndrome. (Id. at 239.) Dr. Atefi indicated that the onset of the chronic fatigue syndrome was twenty years, and that West had tested positive for Epstein Barr virus. (Id.) He indicated no current treatments or medications. (Id.) His assessment stated that West has had a history of chronic fatigue syndrome, and that her history of chronic hepatitis C may be "contributing" to the chronic fatigue. (Id. at 241.)

In October 2004, Dr. Siegel again examined West for her neck pain and noted that she had a pain severity level of six out of ten. (Id. at 317.) In November 2004, Dr. Siegel reported that the pain did not affect West's extremities or affect sensory or motor changes. (Id. at 315.) West then underwent trigger point injections, reporting "increased pain" after the injections. (Id. at 313.)

On November 17, 2004, based on the approval of West's psychiatrist, Sunita Gupta, M.D. ("Dr. Gupta"), Dr. Hudes recommended West begin interferon-based therapy for the treatment of her hepatitis C. (Id. at 255.) Dr. Hudes recommended a 48-week therapy with a coordinated effort by her psychiatrist and pain management specialist. (Id. at 251.) West switched gastroenterologists, in December 2004, to Harsh Kapoor, M.D. ("Dr. Kapoor") to continue treatment for her hepatitis C. (Id. at 391.) At that point, she was two and a half weeks

---

[2] This is the only note from Dr. Atefi in the record. Moreover, the context in which Dr. Atefi treated or examined West is not made clear by the record.

into the interferon treatment, and Dr. Kapoor reported that she was "somewhat okay." (Tr. at 391.) He reported that she was hospitalized for dehydration, but began feeling better. (Id.)

In January 2005, another doctor, John E. Maxa Jr., M.D. ("Dr. Maxa"), treated West for her neck pain. (Id. at 311.) At that visit, West's pain levels remained at a six or seven. Dr. Maxa also reported chronic pain due to myofascial pain syndrome and cervical degenerative disc disease. (Id.) He noted that West had "good symptomatic relief" from her pain medication. (Id.) In April and May 2005, Dr. Siegel reported that West was experiencing side effects from her hepatitis treatment, and "constant and chronic" neck pain that radiated down to her shoulders. (Id. at 305-06.) Her pain level remained at an average of six out of ten. (Id.)

West continued interferon treatment for her hepatitis C, and Dr. Kapoor reported in April 2005 that she was "doing well with treatment." (Id. at 395.) As of May 19, 2005, West ended interferon treatment after five months. (Id. at 400.) Dr. Kapoor reported that West had lost ten pounds since her last visit, had a poor appetite, and was "extremely anxious." (Id. at 399.)

    2.   Mental Assessments

On April 21, 2004, by request of the Disability Determination Service, David S. Bailey, Ed.D. and Linda R. Weigel, M.Ed. administered to West a psychological evaluation. (Id. at 214-20.) West's functional assessment and prognosis was: (1) that she could carry out simple instructions; (2) that her depression and anxiety limited her ability to get along with the public, supervisors and coworkers; (3) that, for the same reasons, her ability to sustain focused attention for timely completion of assigned tasks at least at the level for unskilled activities was also limited; and (4) she would not likely decompensate. (Id. at 219.) In October 2004, West began treating with Dr. Gupta. (Id. at 296.) Dr. Gupta indicated that she had been treating West for

depression and bipolar disorder, and that, as of November 2004, West was stable on her medications. (Id. at 294, 296.)

### 3. State Agency Assessments

In May 2004, Celina Payne-Gair, Ph.D. ("Dr. Payne-Gair") concluded that West did not have any severe medical impairments, and placed mild restrictions on her daily living and social functioning activities. (Tr. at 225, 235.) Dr. Payne-Gair also determined that West had mild difficulty maintaining concentration, persistence, and pace. (Id. at 235.) In December 2004, Janet S. Rice, Ph. D. made similar congruent findings. (Id. at 276-90.) On June 11, 2004, Abraham A. Oyewo, M.D. ("Dr. Oyewo") performed a Physical Residual Functional Capacity Assessment on West. (Id. at 242-49.) Dr. Oyewo found that West could occasionally lift 50 pounds, frequently lift 25 pounds, stand and sit for up to six hours a day, and was unlimited in her pushing/pulling abilities. (Id. at 243.) Dr. Payne-Gair found no postural, manipulative, visual, communicative, or environmental limitations. (Id. at 244-46.) Dr. Oyewa stated that Dr. Wilson's November 2002 finding that West could not lift more than 20 pounds was not supported by medical evidence. (Id. at 248.) On December 3, 2004, Harold E. Sours, M.D. concurred with Dr. Oweya's assessment regarding West's residual functional capacity. (Id. at 249.)

### B. Hearing Testimony

#### 1. West's Testimony

West appeared unrepresented at the hearing before the ALJ. (Id. at 39-47.) She indicated that she travels between Delaware and Georgia, with her legal residence in Delaware. (Id. at 41, 48.) She could drive, but not often. (Id. at 49.) West stated that she had hurt her neck while

working as an x-ray technician, and that her doctor "took" her "out." (Id. at 50-51, 53.) She last worked in October 2002. (Id. at 53-54.)

West testified that her most bothersome health problem was the interferon regime being administered to treat her hepatitis C. (Tr. at 55.) She found that it interfered with her ability to concentrate. (Tr. at 55.) She started the interferon in 2004, and, as of the hearing, had finished six months of the treatment. (Id. at 56-57.) The viral load present in her blood work caused West to question whether she would continue the next six months. (Id.) West indicated that she had fatigue, weight loss, vomiting, nausea, depression, hair loss and constant abdominal pain as side effects of the interferon treatment. (Id. at 57-58.) Her weight at the hearing was 94-95 pounds; her heaviest weight had been 115-118 pounds. (Id. at 57-58.) She indicated that she takes "pain pills" for overall "chronic pain" as well. (Id. at 59.)

West also testified that she had received epidurals for neck pain—the last one in 2004, after which she had "swelled up." (Id.) West testified that she had constant pain in her neck, which radiated down her back and into her right shoulder. (Id. at 60.) She cited a pain severity of seven or eight out of ten, with limited motion from side to side, and up and down. (Id. at 61.)

West testified that her depression and bipolarism were also big health problems. (Tr. at 61.) She testified that her mental health problems had started in 2002. (Id. at 62.) Her psychiatrist, Dr. Gupta, prescribed Lamectil and Paxil for depression, and Zanax for anxiety. (Id. at 61-62.) She indicated that, even with the treatment, she needed to do mental health therapy. (Id. at 63.) She stated that she had crying spells every day, that she had problems with anger and irritability, and got into verbal arguments with others. (Id. at 63.) She also had problems with memory and concentration, and angry mood swings. (Id. at 63-64.) She did not have thoughts of harming herself, and felt safer around people. (Id. at 63.) She testified that she had a racing

7

heart, racing thoughts, and that she would hear and see things that were not there. (Tr. at 64.) She also stated that she had paranoid thoughts, and experienced panic attacks five times a week, which caused her to stay in the house. (Id. at 65.) She stated that the conditions varied each day in response to treatment. (Id. at 66.)

West testified that she also suffered from fibromyalgia and chronic fatigue syndrome, which caused her to be unable to sit or stand for long periods of time. (Id.) She testified that she was diagnosed with chronic fatigue syndrome a "couple of years ago" and fibromyalgia about a year before the hearing. (Id.) She was taking "just pain medications" and "vitamins" to medicate the problems. (Id.)

West indicated that her chronic pain limited her ability to walk, sit, or stand. (Id. at 69.) She stated she could only walk and stand for ten minutes, could sit for only ten to fifteen minutes, and had trouble walking up and down stairs. (Id. at 69-70.) She could lift a five pound bag of sugar, but her fiancé generally did "all the lifting." (Id. at 70.) She could bend forward to her waist, kneel down, squat or crouch down, but could not stoop to the floor. (Id. at 71.) She had limited ability to do things with her hands. (Id. at 72.) She slept for an average of four hours a night, and had the most trouble in the mornings. (Id. at 73.) West's fiancé did all the cooking and chores around the house and yard, while she was limited to performing only simple tasks. (Id. at 73-74.) She testified that her fiancé would usually drive her to places because she would get "lost." (Id. at 75.)

### 2. James Atterberry's Testimony

James Atterberry ("Atterberry"), West's fiancé, testified on her behalf at the hearing before the ALJ. (Id. at 76.) Atterberry stated that he drives West to most of her doctor appointments and does "everything" around the house. (Id. at 77-78.) They travel between

<283>
<284>
<285>
<286>
<287>
<288>
<289>
<290>
<291>
<292>
<293>
<294>
<295>
<296>
<297>
<298>
<299>
<300>
<301>
<302>
<303>
<304>
<305>
<306>
<307>
<308>
<309>
<310>
<311>
<312>
<313>
<314>
<315>
<316>
<317>
<318>
<319>
<320>
<321>
<322>
<323>
<324>
<325>
<326>
<327>
<328>
<329>
<330>
<331>
<332>

Delaware and Georgia two to three times a year, mostly driving, having to stop about every hour and a half during the drive. (Id. at 78-79.) He stated that West is "sheltered" from social activities, and confirmed the symptoms she experienced from the interferon treatment. (Id. at 79.)

### 3. Vocational Expert Testimony

At the same hearing before the ALJ, a Vocational Expert, Tony Melanson ("Melanson") testified as to West's vocational history. (Tr. at 81.) The ALJ posed to Melanson a hypothetical individual of West's age, education, and background, who suffered with the physical and social limitations caused by her medical impairments. (Id. at 82.) Melanson confirmed that the hypothetical individual would not be able to perform "skilled" tasks of the type previously performed by West. (Id.) Melanson testified the hypothetical individual could perform unskilled work at a light level of exertion. (Id.) He offered examples of three jobs in this category. (Id. at 82-83.) These jobs included an assembler, a sorter/inspector, and a packer, with a total of 1,550 positions performed in the local region of Delaware, and 455,000 positions nationwide. (Id.)

### C. The ALJ's Findings

The ALJ determined that West was not disabled within the meaning of the Act. In her written opinion, the ALJ documented her findings based on each of the five steps mandated by 20 C.F.R. § 404.1520. (Tr. at 23-24.)

> Under that five-step analysis, the [Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If an individual is found not to be engaged in substantial gainful activity, the [Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. 20

> C.F.R. 404.1520(d). If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

*Brewster v. Heckler*, 786 F.2d 581, 583-84 (3d Cir. 1986). Based on the record, the ALJ determined that West had not engaged in substantial gainful activity since October 1, 2002, and had three severe impairments: (1) hepatitis C; (2) cervical degenerative disc disease; and (3) depression. (Tr. at 24, Finding Nos. 2 & 3.) The ALJ then discussed the three severe impairments citing the medical evidence of record and West's own testimony. (Id. at 25-26, Finding No. 3.) In discussing West's hepatitis C, the ALJ cited West's gastroenterologist's notes up to April 18, 2005, and stated that "her weight had stabilized and her appetite was good." (Id. at 26, Finding No. 3.)

The ALJ then dismissed West's claimed Epstein Barr virus, chronic fatigue syndrome, fibromyalgia, skin cancer, chronic obstructive pulmonary disease, and irritable bowel syndrome claims as not "medically determinable." (Id.) Despite West's reports of these impairments, the ALJ found that she had not been diagnosed with them. (Id.) Therefore, the ALJ concluded that the lack of diagnosis deemed them not severe. (Id.)

The ALJ then concluded that West did not have an "impairment or combination of impairments" that met or medically equaled the criteria for 20 C.F.R. 404, Subpart P, Appendix 1, Regulations No. 4. (Id. at 26, Finding No. 4.) The ALJ concluded that West's hepatitis C was "mild," and that "she responded well to treatment." (Id.) Furthermore, the ALJ found that West's cervical degenerative disc disease did not meet the criteria because there was no "sign of

motor or sensory loss, or indication that she could not use her hands for fine and gross movements." (Id.) The ALJ found that West's depression placed a "mild restriction [on] activities of daily living" with no "serious limitations." (Id.) She also found "moderate difficulty maintaining social functioning" and "moderate deficiencies in concentration, persistence or pace." (Id.)

The ALJ then concluded that West had a residual functional capacity to perform light, simple/unskilled work. (Tr. at 27, Finding No. 5.) The ALJ stated:

> Upon considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce alleged symptoms. However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

(Id.) The ALJ attributed West's weight loss, vomiting, nausea, frequent abdominal pain, anemia, body aches and blurry vision to temporary side effects of the interferon treatment. (Id.) The ALJ found that, even with the treatment, West was "capable of performing her activities of daily living and self care." (Id.) The ALJ also found that West's testimony regarding her pain level was incongruous with that of the doctor's notes. (Id.) The ALJ noted that West had voluntarily refused further steroid injections for her neck, and that her testimony on her walking and lifting capabilities was "not supported by medical evidence." (Id.)

Giving "some weight" to West's testimony, the ALJ rejected the state's medical assessment that she could perform medium work, and found, instead, that West was only capable of performing light work.[3] (Tr. at 28, Finding No. 5.) The ALJ found that West could not perform past relevant work (id. at 28, Finding No. 6), but that there were jobs that existed in the national economy that West could perform based on her age, education, work experience,

---

[3] ALJ Showalter's opinion defines light work as involving lifting no more than 20 pounds with frequent lifting or carrying of 10 pounds, a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm or leg controls. (Tr. at 28, Finding No. 5.)

11

residual functional capacity and the testimony of the vocational expert. (Id. at 28-29, Finding No. 10.) Therefore, ALJ Showalter found that West was "not disabled." (Id. at 29, Finding Nos. 10-11.)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties to this case filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refrain from] weighing the evidence or making credibility determinations." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court is able to determine that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B. Review of ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L.Ed.2d 490 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971)).

Credibility determinations are the province of the ALJ, and should only be disturbed on review if not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rules of Civil Procedure 56(c). *See Woody v. Sec'y of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV. DISCUSSION

In this appeal, West argues that the Commissioner did not have substantial evidence to support the denial of disability benefits. West presents four arguments to support this claim: (1) that the ALJ erred when she concluded that West's hepatitis C was mild and that West responded well to the interferon treatment; (2) that the ALJ erred when she concluded that West's chronic fatigue syndrome and fibromyalgia were not severe; (3) that the ALJ erred when she failed to consider the effects of the combination of all of West's impairments severe and non-severe; and (4) that the ALJ erred when she failed to mention obviously probative evidence and failed to develop the record for an unrepresented plaintiff. (D.I. 18.)

After considering the parties' arguments and submissions, the court agrees with West in that the ALJ failed to adequately explain her conclusions regarding West's hepatitis C and chronic fatigue syndrome. An ALJ's decision must provide adequate reasoning as to her findings, which "should include a statement of subordinate factual foundations on which ultimate factual conclusions are based." *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Not only should the ALJ provide an explanation of evidence pertinent to her findings, but an

explanation of the evidence "rejected" to facilitate the reviewing court in considering whether the ALJ utilized all of the probative evidence in her decision. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1980); *see also Dobrowolsky*, 606 F.2d at 409. Especially when there is "conflicting probative evidence in the record," the court will remand an ALJ's decision that lacks adequate explanation with regard to factual determinations. *Cotter*, 642 F.2d 706; *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Rather than making broad statements regarding her consideration of the evidence, an ALJ must explain the reasoning behind her conclusions and the weight given to the evidence. *See Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F. 2d 258, 259 (4th Cir. 1977)).

In the present case, ALJ Showalter does not adequately explain her conclusion that West's hepatitis C was mild and that she responded well to treatment. The court finds that the ALJ's statement regarding the status of West's hepatitis C is potentially inconsistent with the medical evidence from May 2005. When considering an April 2005 note from her gastroenterologist, the ALJ described West's condition as "her weight had stabilized and her appetite was good." (Tr. at 26.) According to a May 2005 report from the same doctor, however, West's appetite was poor and she was "extremely anxious." (Tr. at 399.) The ALJ failed to explain how she resolved this apparent inconsistency in reaching her conclusion as to the impact of West's hepatitis C.

Furthermore, the ALJ failed to adequately explain why she classified West's chronic fatigue syndrome as non-severe. This conclusion also appears inconsistent with the medical evidence and West's subjective complaints. For instance, at least one of West's doctors noted a history of chronic fatigue syndrome. (Tr. at 239.) In addition, West tested positive for Epstein

Barr virus, which can be a factor in determining whether chronic fatigue syndrome is medically determinable. Soc. Sec. Ruling (SSR) 99-2p, 3 (1999).[4] Finally, the Commissioner's argument that West failed to produce any evidence of significant limitations from the chronic fatigue syndrome, seems to imply that there is medical evidence to support West's complaint of chronic fatigue syndrome. (D.I. 20.) Given these facts, ALJ Showalter's opinion should include an explanation as to why she concludes that West's chronic fatigue syndrome is not medically determinable and non-severe.

The ALJ also determined that West's fibromyalgia is non-severe. The court finds this conclusion to be based on substantial evidence. Neither the SSR 99-2p report addresses only chronic fatigue syndrome, nor the medical evidence cited by West support her assertions as to the impact of fibromyalgia. Rather, they are directed to the issue of her chronic fatigue syndrome. (Tr. at 239).

Next, West argues that the ALJ failed to consider the effects of the combination of her impairments. The ALJ must look at the combination of impairments, severe and non-severe, when determining the functional capacity of the claimant. *Bailey v. Sullivan*, 885 F.2d 52, 60 (3d Cir. 1989). Here, while ALJ Showalter stated that she considered the "combination of impairments" (Tr. at 26, Ruling No. 4), she further stated that she used West's "medically determinable impairments" in deciding West's residual functional capacity. (Tr. at 27, Ruling No. 6.) Given the above discussion regarding West's chronic fatigue syndrome, the court will remand the matter for the ALJ's determination as to what impact, if any, West's chronic fatigue syndrome might have on the combination of impairments analysis.

---

[4] The Social Security Administration states that its purpose in Social Security Ruling 99-2p is:

> To restate and clarify the policies of the Social Security Administration for developing and evaluating title II and title XVI claims for disability on the basis of Chronic Fatigue Syndrome (CFS), also frequently known as Chronic Fatigue and Immune Dysfunction Syndrome.

Finally, West argues that the ALJ failed to discuss probative evidence and, given her status as an unrepresented plaintiff, failed to adequately develop the medical record. West specifically contends that the ALJ failed to mention Dr. Bailey's GAF rating of 50, the testimony of her fiancé, the length of the interferon treatment ordered by Dr. Hudes, and the existence of her severe depression and neck pain prior to December 2004. (D.I. 18.) The court disagrees. With regards to Dr. Bailey's GAF rating, the court agrees with the Commissioner that despite not mentioning the specific GAF rating, the ALJ adequately incorporated and gave weight to Dr. Bailey's medical evidence. As the Third Circuit has stated,

> Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.

*Fargnoli*, 247 F.3d at 42. ALJ Showalter adequately considered and evaluated Dr. Bailey's medical opinion within her decision. With respect to Atterberry's testimony, the court finds that it does not add anything to West's testimony or contradict the ALJ's findings regarding West's credibility. *See Sherrer v. Apfel*, No. Civ. A. 99-2930, 2000 WL 233241, at *3 (E.D. Pa. Mar. 1, 2001) (noting that an ALJ's failure to discuss the reasons for rejecting lay testimony is not necessarily grounds for remand if that testimony is not considered probative).

In addition, the court finds that the ALJ's decision adequately addresses the potential additional length of West's interferon treatment. The court also finds that ALJ Showalter's decision adequately addresses West's depression and neck pain prior to 2004, as she concludes that West has both the severe impairments of depression and cervical degenerative disc disease.

Last, the court is not persuaded by West's arguments that the ALJ failed to develop the record for an unrepresented claimant. Under Third Circuit law, "if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness

16

due to the lack of counsel, this is sufficient for remand, or reversal." *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980). In the present case, the court finds that the hearing before the ALJ was not unfair. Nor was the lack of counsel prejudicial to West.

## V. CONCLUSION

For the foregoing reasons, the court will remand this matter for further administrative proceedings consistent with this opinion. Accordingly, the court will deny the Commissioner's motion for summary judgment, deny West's motion for summary judgment, and grant West's request for remand.

Dated: August 26, 2009

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| E. LORRAINE WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-158-GMS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's motion for summary judgment (D.I. 19) is DENIED.

2. The plaintiff's motion for summary judgment (D.I. 17) is DENIED.

3. The plaintiff's request for a remand (D.I. 17) is GRANTED.

4. The decision of the Administrative Law Judge is REMANDED for further proceedings consistent with this Memorandum.

Dated: August 26, 2009

CHIEF, UNITED STATES DISTRICT JUDGE